**FOLEY & LARDNER LLP**
ONE MARITIME PLAZA, SIXTH FLOOR
SAN FRANCISCO, CA 94111-3409
TELEPHONE:    415.434.4484
FACSIMILE:    415.434.4507

LAURENCE R. ARNOLD, CA BAR NO. 133715
LARNOLD@FOLEY.COM
EILEEN R. RIDLEY, CA BAR NO. 151735
ERIDLEY@FOLEY.COM
SCOTT P. INCIARDI, CA BAR NO. 228814
SINCIARDI@FOLEY.COM

Attorneys for Respondents Stanford Hospital & Clinics
and Lucile Packard Children's Hospital

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715, <br><br> Petitioner, <br><br> vs. <br><br> STANFORD HOSPITAL AND CLINICS AND LUCILE PACKARD CHILDREN'S HOSPITAL, <br><br> Respondents. | Case No:  5:08-CV-00215 JF <br><br> STANFORD HOSPITAL AND CLINICS' AND LUCILE PACKARD CHILDREN'S HOSPITAL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF CLAIMS OR DEFENSES <br><br> [FED. R. CIV. P. 56] <br><br> Date:          August 29, 2008 <br> Time:         9:00 A.M. <br> Dept:         Ctrm. 3, 5th Floor <br><br> Judge:        Hon. Jeremy Fogel |

///

///

///

///

///

///

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ...................................... 1

II.   STATEMENT OF FACTS ................................................................................ 2

    A.    The Certification And Collective Bargaining Agreement ...................................... 3

    B.    Beginning In Early 2006, The Hospitals Were Presented With Increasing Evidence That Local 715 Had Ceased To Exist And/Or Had Transferred Its Representative Duties To UHW ...................................................... 4

        (1)    In Late February, 2006 Local 715 Enters Into A "Servicing Agreement" With UHW ...................................................... 4

        (2)    In March, 2006, UHW Begins Carrying Out Representational Functions Formerly Performed By Local 715 ............................................ 4

        (3)    Between March and May, 2006, UHW Employees Continue To Carry Out Local 715's Functions, And Evidence Surfaces That Local 715 Was Defunct ...................................................... 5

        (4)    The Hospitals Refuse To Deal With UHW Employees ............................................ 6

        (5)    SEIU Develops, Adopts, And Implements A Plan To Merge Locals, Including Local 715, Into New Locals, And Transfer Local 715's Representation Rights At The Hospitals To UHW ........................ 7

        (6)    The Hospitals Request A Copy Of The Servicing Agreement And Inform Local 715 That The Hospitals Do Not Consider The Servicing Agreement To Be Legitimate. ...................................................... 7

        (7)    In Early 2007, Local 715 Prepared To Disband Itself And Its Representatives Confirmed That It Had Ceased To Exist ........................ 8

        (8)    The Hospitals Continue To Request Information From Local 715 And Cease Remitting Dues To It In Light Of The Evidence That Local 715 Had Ceased To Exist...................................................... 10

        (9)    In June, 2007, "Local 715" Was Purportedly Placed Under Trusteeship, And The Trustee Appointed New Counsel ........................ 11

        (10)   Weinberg Attorneys Continue To Act On Behalf Of "Local 715", But Refuse To Clarify Their Representative Capacity ............................ 12

    C.    The Grievance ...................................................................................... 13

III.  DISCUSSION ............................................................................................ 13

    A.    Legal Standards Applicable To Summary Judgment Motions ............................ 13

    B.    The Petition Is Not Timely ...................................................................... 14

SFCA_1424912.3

C. The Hospitals Are Not Required To Arbitrate The Grievance Because Local 715 Has Effectively Ceased To Exist ........................................................ 14

   (1) SEIU Adopted And Implemented A Plan That Expressly Called For The Dismemberment And Dissolution Of Local 715 ........................ 16

   (2) The Bulk Of Local 715's Former Membership And Functions Were Merged Into Local 521 ..................................................... 16

   (3) Local 715's Private Hospital Members And Functions Were Transferred To UHW .......................................................................... 17

      a) **Under The Guise Of An Invalid Servicing Agreement, Local 715 Assigned Its Representative Functions To UHW**.............. 17

      b) **UHW Began Receiving Dues Deducted From Bargaining Unit Members Paychecks**.................................................................... 18

      c) **Bargaining Unit Employees Were Asked To Agree To Change Their Union Affiliation To UHW** .......................................... 18

      d) **President Stern Ordered The "Reorganization" Of Local 715 Into UHW, And Chief Shop Steward Robert Rutledge Admitted That Local 715 Had Ceased To Exist**...................... 19

      e) **"Local 715" Is Represented By UHW's Legal Counsel**........... 19

      f) **UHW Holds Itself Out As The Representative Of The Bargaining Unit**.................................................................... 20

   (4) As Local 715 Has Effectively Ceased To Exist, The Hospitals Have No Obligation To Arbitrate The Dues Grievance .......................... 20

   (5) The Maintenance Of "Local 715" As A Sham Organization Does Not Change The Result ......................................................... 20

D. Whether Or Not Local 715 Continues To Exist, The Hospitals Are Not Required To Participate In Grievance And/Or Arbitration Proceedings With Representatives Of UHW Because UHW Is Not The Certified Representative And The Servicing Agreement Is Not Valid.............................. 21

E. If The Court Decides That This Case Presents A Representational Issue On Which It Should Not Rule, It Should Issue A Stay......................................... 24

IV. CONCLUSION.............................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..........................................................................................14

*Brooks v. National Labor Relations Board*,
    348 U.S. 96 (1954)............................................................................................15

*Celotex Corporation v. Catrett*,
    477 U.S. 317 (1986)..........................................................................................14

*Goad Company*,
    333 NLRB 677 (2001) ......................................................................................23

*Hotel Employees, Restaurant Employees Union, Local 2 v. Marriott Corporation*,
    961 F.2d 1464 (9th Cir. 1992) ..........................................................................24

*International Brotherhood Of Boilermakers, Iron Ship Builders, Black-Smiths, Forgers
    And Helpers, AFL-CIO v. Local Lodge D354*,
    897 F.2d 1400 (7th Cir. 1990) ..........................................................................15

*Local No 3-193 International Wood-Workers Of America v. Ketchikan Pulp Company*,
    611 F.2d 1295 (9th Cir. 1980) ..........................................................................24

*Lorber Industries Of California v. Los Angles Printworks Corporation*,
    803 F.2d 523 (9th Cir. 1986) ............................................................................15

*Matushita Electric Industrial Company v. Zenith Radio Corporation*,
    475 U.S. 574 (1985)..........................................................................................14

*Medo Photo Supply Corporation v. National Labor Relations Board*,
    321 U.S. 678 (1944)..........................................................................................15

*Moruzzi v. Dynamics Corporation Of America*,
    443 F.Supp. 332 (S.D.N.Y. 1977) ........................................................15, 21, 24

*Nevada Security Innovations, Ltd.*,
    341 NLRB 953 (2004) ......................................................................................15

*Pioneer Inn Associates v. National Labor Relations Board*,
    578 F.2d 835 (9th Cir. 1978) ............................................................................15

*Sherwood Ford, Inc*,
    188 NLRB 131 (1971) ......................................................................................23

SFCA_1424912.3

*Sisters Of Mercy Health Corporation*,
  277 NLRB 1353 (1985) ................................................................................15

*United Steelworkers Of America v. Retirement Income Plan for Hourly Rated Employees Of Asarco, Inc.*,
  512 F.3d 555 (9th Cir. 2006) .......................................................................14


### FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

29 U.S.C.,
  Section 185 (Labor Management Relations Act, Section 301)................................1, 14, 24, 25
  Section 186 (Labor Management Relations Act, Section 302)................................23
  Section 186(a) ................................................................................23
  Section 186(b)(1) ...........................................................................23
  Section 186(c)(4) ...........................................................................23
  Section 186(d)(2) ...........................................................................23

Federal Rules of Civil Procedure,
  Rule 56 ..........................................................................................1, 14
  Rule 56(c) .......................................................................................13

1

## NOTICE OF MOTION AND MOTION

2    TO THE PETITIONER AND ITS ATTORNEYS OF RECORD:

3    NOTICE IS HEREBY GIVEN that on August 29, 2008 at 9:00 AM, or as soon thereafter

4    as counsel may be heard by the above-entitled Court, located at 280 South 1st Street, San Jose,

5    CA 95113, 5th Floor, Courtroom 3, Respondents Stanford Hospital & Clinics and Lucile Packard

6    Children's Hospital (the "Hospitals") will and hereby do move the Court for summary judgment

7    or, in the alternative, summary adjudication of claims or defenses pursuant to Federal Rule of

8    Civil Procedure ("Fed. R. Civ. P.") 56 (the "Motion").

9    By this Motion, the Hospitals seek an order by this Court denying the Petition of Service

10   Employees International Union, Local 715 ("Local 715") and holding that the Hospitals are

11   entitled to judgment as a matter of law in the above-captioned case on the grounds that the

12   Petition is untimely.  Furthermore, the Hospitals cannot be compelled to arbitrate the matter at

13   issue because Local 715 has ceased to exist or, in the alternative, that the entity or persons

14   seeking to arbitrate with the Hospitals are not Local 715 and therefore lack standing to require

15   the Hospitals to arbitrate.  Thus, the Petition should be dismissed with prejudice.  This Motion is

16   based upon this notice of motion and motion, the accompanying memorandum of points and

17   authorities, the declarations of Laurie J. Quintel, Laurence R. Arnold, and Scott P. Inciardi, all

18   pleadings and papers on file in this action and upon such other matters as may be presented to the

19   Court at the time of the hearing.

20   ## MEMORANDUM OF POINTS AND AUTHORITIES

21   ## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

22   Local 715 has failed to commence this action under Section 301 of the Labor

23   Management Relations Act within the applicable six (6) month limitations period and, therefore,

24   this action must be dismissed.  To the extent that Local 715's Section 301 action is not ruled

25   untimely, this action concerns the issue of whether the respondents, Stanford Hospital & Clinics

26   and Lucile Packard Children's Hospital (the "Hospitals") are required to participate in arbitration

27   with the petitioner, Service Employees International Union, Local 715 ("Local 715") pursuant to

28   a collective bargaining agreement (the "CBA").  The Hospitals do not dispute that the matter that

-1-

SFCA_1424912.3

would be arbitrated, a grievance over the Hospitals alleged failure to remit dues, is within the scope of issues that are arbitrable under the CBA.  There is, however, a threshold factual determination that must be made before the Hospitals can be required to arbitrate the matters – that determination being the status and identity of the party seeking to require the Hospitals to arbitrate.

It is undisputed that the only entity with which the Hospitals are obligated to arbitrate is Local 715.  Similarly, it is undisputed that Local 715 was certified as the exclusive representative of the relevant bargaining unit of Hospital employees (the "Bargaining Unit") and was the signatory to the CBA that creates the obligation to arbitrate.  However, as a result of a plan implemented by the Service Employees International Union ("SEIU" or the "International"), as of approximately March 1, 2007, Local 715 effectively ceased to exist.

As a result of SEIU's actions most, if not all, of Local 715's former assets and functions were transferred to a new local union known as Service Employees International Union, Local 521 ("Local 521").  Additionally, under the guise of an invalid "Servicing Agreement," Local 715's representative duties were wholly transferred to a local union known as Service Employees International Union, United Healthcare Workers – West ("UHW").

Under the National Labor Relations Act (the "NLRA" or "Act") the Hospitals are required to recognize Local 715, and no other organization, as the bargaining representative of its employees.  Additionally, the CBA obligates the Hospitals to arbitrate disputes with Local 715, and no other.  As Local 715 effectively ceased to exist as a viable labor organization, the Hospitals can have no obligation to arbitrate with it.  Furthermore, whether or not Local 715 continues to exist, the Hospitals cannot be forced to arbitrate with representatives of UHW.  The Hospitals, therefore, seek an order denying Local 715's petition to compel arbitration and a dismissal with prejudice of this action.

## II.    STATEMENT OF FACTS

The following facts are material to the issues in this matter and Motion and cannot be genuinely disputed.

///

### A.    The Certification And Collective Bargaining Agreement

In 1998, after a National Labor Relations Board (the "Board") -conducted election, the Board issued an order certifying "Local 715, Service Employees International Union, AFL-CIO" as the "exclusive collective bargaining representative" of a unit of Hospital employees described in the order (the "Certification").[1] [Declaration of Laurence R. Arnold In Support Of Motions ("Arnold Decl.") ¶ 2-3 & Exh. A.] Pursuant to the Certification, the Hospitals recognized Local 715 as the exclusive bargaining representative and subsequently negotiated a series of collective bargaining agreements. The current collective bargaining agreement (the "CBA") became effective on January 20, 2006, and is scheduled to expire on November 4, 2008. [Arnold Decl. ¶ 4.] Article 1.1 of the CBA states that it "is made and entered into between Stanford Hospital and Clinics (SHC) and Lucile Packard Children's Hospital (LPCH) . . . and the Service Employees International Union, Local 715, AFL-CIO, CLC (hereinafter referred to as "Union")." [Arnold Decl. Exh. B.] Article 1.3.1 of the CBA contains a "Recognition Clause," which states that, pursuant to the Board's Certification, "the Employer recognizes the Union, as the sole and exclusive representative for the purpose of collective bargaining" with respect to Bargaining Unit employees. [Id.]

Article 26 of the CBA contains a grievance and arbitration procedure through which alleged violations of the CBA may be challenged. [Id.] Article 26.2.1 of the CBA states that "The Union" (i.e. Local 715) "will have the right to present grievances under this procedure on behalf of an individual employee, on behalf of a group of employees, or on behalf of itself as a Union grievance." [Id.] Article 26.2.3.e provides that "only the Union" (Local 715) "may appeal a grievance to arbitration." [Id.]

///
///
///
///

---

[1] The subject unit is the relevant one for the issues raised in this case and Motion.

SFCA_1424912.3

**B.      Beginning In Early 2006, The Hospitals Were Presented With Increasing Evidence That Local 715 Had Ceased To Exist And/Or Had Transferred Its Representative Duties To UHW**

Beginning in early 2006, Local 715 underwent changes that, as of at least March, 2007, effectively extinguished it as an ongoing operation.  These events were made known to the Hospitals in a piecemeal fashion, eventually causing the Hospitals to conclude that Local 715 had ceased to exist, and/or had attempted to transfer its bargaining rights to UHW.

**(1)      In Late February, 2006 Local 715 Enters Into A "Servicing Agreement" With UHW**

Between February 18 and February 20, 2006, shortly after the CBA became effective, Sal Roselli, the President of UHW, and Kristy Sermersheim, the Executive Secretary of Local 715, executed a three (3) page document titled "Servicing Agreement" (the "Servicing Agreement"). [Arnold Decl. ¶ 36 & Exh. CC; Declaration of Scott P. Inciardi In Support of Motions ("Inciardi Decl." Exh. EE.]  The Servicing Agreement provided that UHW would provide certain "professional services" to Local 715 at no cost, including "Representation in the grievance procedure and at arbitration hearings," "Representation at labor-management meetings," and "Assistance to members appearing before the National Labor Relations Board on behalf of the Local 715 Chapter at the Stanford Facility."  [Id.]  The Servicing Agreement further provided that, Local 715 and UHW would take such steps as were necessary to enforce the agreement, including initiating proceedings before the NLRB, in the event that the Servicing Agreement was rejected by the Hospitals."  [Id.]  By its terms, the Servicing Agreement was to be effective as of March 1, 2006.  [Id.]

**(2)      In March, 2006, UHW Begins Carrying Out Representational Functions Formerly Performed By Local 715**

On February 28, 2006, Greg Pullman, Local 715's Staff Director, informed Laurie Quintel, the Hospitals' Director of Employee and Labor Relations, that she should work with an employee of UHW named Ella Hereth in connection with the settlement of grievances and unfair labor practice charges.  [Declaration of Laurie J. Quintel In Support Of Motions ("Quintel

-4-

SFCA_1424912.3

Decl.") ¶ 9.]  Around the same time, Ms. Hereth brought another person named Rachel Deutsch to Ms. Quintel's office.  Ms. Deutsch identified herself as a representative of UHW and informed Ms. Quintel that UHW would be taking over representation for the Hospitals.  [Quintel Decl. ¶ 10.]  When Ms. Quintel sought clarification, Mr. Pullman assured Ms. Quintel that "Local 715 represents the workers covered by our agreement" but that "Local 715 has asked SEIU UHW to service this unit in many ways on a day-to-day basis."  [Quintel Decl. ¶ 11-12 & Exh. B.]  The Hospitals accepted this representation for the time being.  [Quintel Decl. ¶ 13.]

> **(3)    Between March and May, 2006, UHW Employees Continue To Carry Out Local 715's Functions, And Evidence Surfaces That Local 715 Was Defunct**

Between March and May, 2006, the functions that had formerly been carried out by Local 715 personnel were carried out exclusively by UHW employees.  In particular, letters relating to grievances and information were sent to the Hospitals by UHW employees on UHW stationery.  Some of these letters stated that the grievances in question were filed "on behalf of SEIU UHW" or referred to Bargaining Unit employees as "members" of UHW.  [Quintel Decl. ¶ 15 & Exh. D.]  During the same period, Mr. Pullman sent a letter to Ms. Quintel instructing her to "direct all SEIU correspondence" to "Ella Hereth and Rachel Deutsch, SEIU United Healthcare Workers – West."  [Quintel Decl. ¶ 14 & Exh. C.]  On May 22, 2006, Ms. Olick informed the Hospitals that "I and Ella Hereth do not work for SEIU 715.  SEIU-UHW is doing the representation work here at Stanford Hospital."  [Quintel Decl. ¶ 20 & Exh. H.]  Mr. Pullman stated in an e-mail sent the same day, that "Jocelyn Olick, Rachel Deutch and Ella Hereth out of the SEIU UHW San Francisco office are handling ***all representation matters*** for SEIU Local 715."  [Quintel Decl. ¶ 20 & Exh. H (emphasis supplied).]  On May 26, 2006, Ms. Quintel received an e-mail from Ms. Olick in which Ms. Olick purported to have authority to accept changes to the CBA. [Quintel Decl. ¶ 21 & Exh. I.]

Between March and May, 2006, the Hospitals also received communications from the Weinberg Firm, which had historically acted as Local 715's attorneys, suggesting that Local 715 was no longer acting as the bargaining representative.  On or around March 28, 2006, W. Daniel

Boone of the Weinberg Firm wrote a letter to Laurence R. Arnold, an attorney with the law firm of Foley & Lardner LLP, which represents the Hospitals, regarding a pending grievance.  In the subject line of his letter, Mr. Boone referred to "United Healthcare Workers – West (formerly SEIU, Local 715)."[2]  [Arnold Decl. ¶ 26 & Exh. S.]

In early April, 2006, Ms. Quintel received a telephone call from Phyllis Willett, who identified herself as an employee of UHW and stated that when the Hospitals remitted union dues, they needed to provide the social security numbers of the relevant employees to help UHW identify them.  [Quintel Decl. ¶ 16.]  Around April 17, 2006, Ms. Quintel received a letter from William A. Sokol of the Weinberg Firm in which he stated "I am writing on behalf of SEIU United Healthcare Workers West" and requested that the Hospitals provide information pertaining to Bargaining Unit employees, and the dues deducted from their paychecks.  [Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals, in a letter sent by Mr. Arnold on April 25, 2006, responded that, as Local 715 was the bargaining representative, the Hospitals would not remit dues or provide information to UHW.[3]  [Arnold Decl. ¶ 30 & Exh. X.]

### (4)    The Hospitals Refuse To Deal With UHW Employees

In May and June, 2006, due to the mounting evidence that, rather than providing limited "professional services," UHW was actually assuming all of Local 715's former functions, the Hospitals made clear that they did not consent to any transfer of bargaining rights from Local 715 to UHW, and that the Hospitals would not deal with employees of UHW.  [Quintel Decl. ¶ 19 & Exh. G; Arnold Decl. ¶ 32 & Exh. Z.]  In June, 2006, Hospitals also requested information from Local 715 regarding the organization's current status and the role of UHW, given the indications that Local 715 had abandoned, or was abandoning, its status as certified representative.  [Arnold Decl. ¶ 32 & Exh. Z.]

---

[2] When questioned about this reference, Mr. Boone wrote a letter stating that it was in error. However, the subject line of that letter continued the use of the reference.  [Arnold Decl. ¶ 25-28 & Exh. R-W.]

[3] The next month, the Hospitals counsel received another letter from Mr. Sokol whose content was nearly identical to the April 17, 2006 letter, but which requested the dues-related information on behalf of Local 715 instead of UHW.  [Arnold Decl. ¶ 31 & Exh. Y.]

SFCA_1424912.3

**(5)**      **SEIU Develops, Adopts, And Implements A Plan To Merge Locals,**

**Including Local 715, Into New Locals, And Transfer Local 715's**

**Representation Rights At The Hospitals To UHW**

On June 9, 2006 the SEIU issued a document titled "Hearing Officers' Joint Report And Recommendations" (the "Joint Report"). The Joint Report outlined a plan to reorganize various SEIU Locals (the "SEIU Reorganization Plan"). The Joint Report noted, "Local 715 is the certified representative of employees at Stanford and Lucille (sic) Packard Hospitals" but that "UHW is actually servicing employees in these facilities . . . pursuant to servicing agreements." [Inciardi Decl. Exh. T p. 16.] The Joint Report concluded that, in order to maximize local union strength, the jurisdiction of various local unions should be changed. With respect to government employee unions, the report recommended the creation of new local unions, that would absorb "a substantial portion" of the membership of existing local unions, including Local 715. [Inciardi Decl. Exh. T p. 40.] The Joint Report also recommended that, "the affiliation of private healthcare units represented by Locals 727, 715, and 2028 should be changed to UHW as soon as feasible." [Inciardi Decl. Exh. T p. 65.]

Two days later, on June 11, 2006, Andrew L. Stern, International President of the SEIU, issued a memorandum to "Affected SEIU Local Unions in California" announcing that the SEIU had decided to adopt the recommendations outlined in the Joint Report. The memorandum confirmed that "Private Sector Hospital units currently represented by Locals 535, 707, 715, 2028, and 4988 will merge into UHW." [Quintel Decl. ¶ 23 & Exh. K at p. 4.]

**(6)**      **The Hospitals Request A Copy Of The Servicing Agreement And**

**Inform Local 715 That The Hospitals Do Not Consider The Servicing**

**Agreement To Be Legitimate.**

On June 15, 2006, Mr. Arnold received a letter from Mr. Pullman regarding the Hospitals' request for information on Local 715 and its relationship with UHW. Mr. Pullman assured Mr. Arnold that "[t]he two employees we have asked SEIU-UHW to provide are under the direction of Local 715 and are there to represent Local 715 and its bargaining unit at Stanford Hospital. That is all that is happening." [Arnold Decl. ¶ 34 & Exh. AA.] However, by this time,

-7-

through their own investigation, the Hospitals had learned of the Joint Report and the Stern Memorandum and could not accept Mr. Pullman's assurances. The Hospitals requested more information, including a copy of the Servicing Agreement. [Arnold Decl. ¶ 35 & Exh. AA.]

The Hospitals received the Servicing Agreement in mid August and reviewed it. [Quintel Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 36-38 & Exh. CC-EE.] Upon review, it was apparent that the document did not fully or accurately describe the relationship between Local 715 and UHW. While the Servicing Agreement called for UHW personnel to provide services under the direction of Local 715, the actual conduct of the UHW employees who were performing such services, along with the statements made by Mr. Pullman and others, reflected that Local 715 had totally abdicated its representative duties and had assigned them to UHW in accordance with the SEIU's reorganization plan.[4] [Arnold Decl. Exh. EE.] Accordingly, in a letter dated August 29, 2006 addressed to Ms. Sermersheim, Mr. Arnold stated that the Hospitals did not recognize the Service Agreement, and would not deal with employees of UHW acting pursuant to it. [Arnold Decl. ¶ 38 & Exh. EE.]

### (7)    In Early 2007, Local 715 Prepared To Disband Itself And Its Representatives Confirmed That It Had Ceased To Exist

On January 2, 2007, International President Stern issued an "Order Of Reorganization" to various SEIU locals, including Local 715. [Inciardi Decl. Exh. U.] President Stern ordered that all workers represented by Local 715, with certain exceptions, be "reorganized into SEIU Local 521." President Stern further ordered that "all . . . Stanford/Lucille (sic) Packard Hospital workers be, ***and are hereby***, reorganized into SEIU Local UHW." [Inciardi Decl. Exh. U (emphasis supplied).] Such "reorganization" was to take place as soon as practicable.

On January 31, 2007, Robert W. Rutledge, Chief Steward for the Bargaining Unit, sent an e-mail to Senior Employee and Labor Relations Specialist Valerie Jeffries with a copy to Ms. Quintel.[5] In the course of that e-mail, Mr. Rutledge wrote, "SEIU 715 no longer exists and a

---

[4] This included, contrary to the Servicing Agreement, the right to collect and receive dues, as Mr. Sokol's April 17, 2006 letter made clear.

[5] Because, by this time, the Hospitals were refusing to deal with UHW employees, the shop

service agreement between the former 715 and UHW has been in place since March first of 2006." [Quintel Decl. ¶ 28 & Ex. O.] Although copies of this e-mail were also sent to Ms. Olick (a purported agent of Local 715 under the Service Agreement) and Kim Tavaglione (another employee of UHW), neither of them responded to contradict Mr. Rutledge's assertion that Local 715 had ceased to exist.[6] [Id.] At a meeting with Ms. Quintel on or around February 2, 2007, Mr. Rutledge repeated his assertion that Local 715 no longer existed. He also stated that Local 715 no longer represented employees at the Hospitals, and that they were now represented by UHW. [Quintel Decl. ¶ 29.]

Local 715 maintained a website located at http://www.SEIU715.org (the "Local 715 Website"). Beginning in late January, 2007, Laurie Quintel began to monitor the Local 715 Website. She discovered that the website now contained a prominent statement that "We are in the process of transitioning to our new local 521. This web site will be taken down on Feb. 28. On March 1, our new Local's web site www.seiu521.org will have your chapter pages and other information." [Quintel Decl. ¶ 30 & Ex. P.]

On March 1, 2007, Ms. Quintel discovered that when she attempted to access the Local 715 Website, she was now automatically redirected to the website of Local 521 at http://www.SEIU521.org (the "Local 521 Website"). [Quintel Decl. ¶ 32.] In exploring the Local 521 Website, Ms. Quintel discovered a page containing a statement that five local unions, including Local 715 "have come together . . . by forming one larger, more powerful local." [Quintel Decl. ¶ 32 & Ex. R.] Another page referenced benefits available to "former SEIU Local 715 members." [Id.] On March 5, Ms. Quintel discovered the following statement on the Local 521 Website: "Five locals (415, 535, 700, 715, and 817) have come together to cover the North Central region by forming one larger, more powerful local. On January 2, 2007, our new

///

---

stewards appointed by Local 715 prior to March 1, 2007 were the Hospitals main point of contact with the purported Local 715. [Quintel Decl. ¶ 25.]

[6] Notably, no one associated with Local 715 was even copied on the e-mail.

SFCA_1424912.3

1  local received its charter.  On March 1, 2007, the resources of all five locals were transferred to

2  Local 521."  [Quintel Decl. ¶ 40 & Exh. X.]

3        When Ms. Quintel used the Local 521 Website's search feature to find the Hospitals, her

4  search returned no results.  [Quintel Decl. Exh. X.]  However, when, on March 2, 2007, she

5  performed a similar search on the UHW Website (http://SEIU-UHW.org), "Stanford University

6  Medical Center" was listed as a facility represented by UHW.[7]  [Quintel Decl. ¶ 34 & Exh. S.]

7        At the same time that these statements were being posted on the SEIU Locals' websites,

8  "Local 715's" purported representatives were responding to the Hospitals' inquiries regarding

9  the status of Local 715 by baldly asserting that it continued to exist and had undergone no

10  changes.  [Quintel Decl. ¶ 39 & Exh. W.]

11        **(8)**     **The Hospitals Continue To Request Information From Local 715 And**

12                      **Cease Remitting Dues To It In Light Of The Evidence That Local 715**

13                      **Had Ceased To Exist**

14        It was now clear to the Hospitals that, at least as of March 1, 2007, Local 715 had ceased

15  to exist.  Yet, under the CBA, the Hospitals were obligated to deduct union dues from

16  Bargaining Unit employees' paychecks and remit them to "Local 715."  The dues deduction

17  authorization forms, by which the individual bargaining unit members authorized deduction and

18  remittance of union dues, called for remittance of the dues specifically to Local 715, and to no

19  other organization.  [Quintel Decl. ¶ 35 & Exh. T.]  The Hospitals determined that they could no

20  longer remit dues to "Local 715" now that the organization apparently was no more and its

21  former representatives refused to demonstrate otherwise.  [Quintel Decl. ¶ 36-37.]  Accordingly,

22  on March 2, 2007, Ms. Quintel sent a letter to Ms. Sermersheim that, after the remittance of the

23  dues for February, 2007, the Hospitals would no longer remit dues to "Local 715" absent

24  clarification of its status and the identity of the organization that would be receiving the dues.[8]

25  

26  [7] UHW has continued to assert on its website that it represents the Hospitals since that time, as

27  screenshots from its website taken in March, 2008 reveal.  [Inciardi Decl. ¶ 24 & 29-30 & Exh.
   C21-C22.]

28  [8] The Hospitals' position is that Local 715 ceased to exist after March 1, 2007, or thereabouts.
   The Hospitals anticipate that Local 715 will contend (despite the evidence to the contrary) that it

SFCA_1424912.3

1    [Quintel Decl. ¶ 36 & Exh. U.]  The requested information was not provided, and after March 1,

2    2007, the Hospitals ceased remitting dues.  [Quintel Decl. ¶ 37.]  The Hospitals continued to

3    deduct dues from Bargaining Unit employees' checks, but held the dues in a separate bank

4    account established for that purpose, a procedure that continues to this date.  [Quintel Decl.

5    ¶ 37.]

6         In fact, evidence later came to light that Local 521 was the actual recipient of the dues

7    being remitted to Local 715.  A document posted on the Local 521 Website titled "Dues Receipts

8    of the year of 2007" showed that, in September, 2007, Local 521 received a payment of dues

9    totaling $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used

10   acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had

11   been assigned to the SHC/LPCH Bargaining Unit).  [Arnold Decl. ¶ 57 & Exh. WW.]  This was

12   the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for

13   February, 2007, which was $21,949.35.  [Quintel Decl. ¶ 38 & Exh. V.]  Additionally, given

14   UHW's requests for identifying information for Hospital employees in early 2006, it appeared

15   that the ultimate recipient of the dues sent to "Local 715" could be UHW.

16                **(9)      In June, 2007, "Local 715" Was Purportedly Placed Under**

17                         **Trusteeship, And The Trustee Appointed New Counsel**

18        On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship."  [Inciardi

19   Decl. Exh. Z.]  That order stated that, because of the Hospitals' "position" that Local 715 had

20   ceased to exist, and the transfer of the bulk of Local 715's former members and resources to

21   Local 521, the SEIU was placing "Local 715" under trusteeship, removing its officers, and

22   appointing Bruce W. ("Rusty") Smith as trustee.  The order confirmed that the SEIU's

23   reorganization plan remained in place and that the remaining members of Local 715 would be

24   "united with other SEIU healthcare members in SEIU United Healthcare Workers – West."

25   [Inciardi Decl. Exh. Z.]  Mr. Smith sent a letter to Ms. Quintel on June 14, 2007 informing her of

26   _____

27   continues to exist.  References are, for this reason, made to "Local 715" relating to the time
     period after March 1, 2007.  These references do not represent, and should not be construed as,
28   an admission that Local 715 continued to exist after that date.

SFCA_1424912.3

1   the trusteeship, that the Servicing Agreement would "remain in full force and effect," and that

2   UHW employees would continue to "service" the Hospitals.[9]  [Quintel Decl. ¶ 48 & Exh. FF.]

3   Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm

4   Altshuler Berzon LLP (the "Altshuler Firm") was now representing Local 715.  Mr. Arnold

5   confirmed this in a conversation with Ms. Chisholm followed by a confirming letter.  [Arnold

6   Decl. ¶ 40 & Exh. FF.]

7          **(10)    Weinberg Attorneys Continue To Act On Behalf Of "Local 715", But**

8                  **Refuse To Clarify Their Representative Capacity**

9   To date, the Hospitals have not received any notification that the Altshuler Firm no

10  longer represents "Local 715."  [Quintel Decl. ¶ 57; Arnold Decl. ¶ 40.]  Nevertheless, the

11  Hospitals continued to receive correspondence from Weinberg Firm attorneys purporting to act

12  on "Local 715's" behalf in grievance and arbitration matters.  [Arnold Decl. ¶ 49, 55 & 65 &

13  Exh. UU & EEE.]  Weinberg Firm attorneys also appeared in each arbitration hearing that was

14  held after the appointment of the Altshuler Firm as counsel.  [Arnold Decl. ¶ 46 & 49 & Exh.

15  LL.]  The Hospitals were aware that the Weinberg Firm has historically acted as counsel to

16  UHW and it had previously sent correspondence to the Hospitals representing UHW pursuant to

17  the invalid Servicing Agreement.  [Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals became

18  concerned that when the Weinberg Firm acted on behalf of "Local 715," it was actually retained

19  by UHW and acting under authority of the rejected Servicing Agreement.  However, the

20  Hospitals' requests to "Local 715" for information on this issue were met with silence or outright

21  refusal to provide the information requested.[10]  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]  The

22

23  _____

24  [9] The letter was sent to Ms. Quintel via facsimile transmission ("fax").  Notably, the information line automatically printed by the sending fax machine (the "fax stamp") indicated that the fax originated from "SEIU 521."  [Quintel Decl. ¶ 48 & Exh. FF.]

25  [10] In fact, "Local 715's" refusal (or inability) to produce any information that could substantiate its claim that it continues to exist is an ongoing theme.  The Hospitals have propounded

26  discovery on Local 715, as well as Local 521 and UHW (all of whom are represented by the Weinberg Firm) seeking information on, among other things, Local 715's continued existence.

27  Local 715 refused to produce anything but a paltry thirty-four (34) pages of documents.  Local 521 and UHW refused to produce any documents.  The Hospitals, therefore, have been forced to

28  file motions to compel with this Court to secure adequate responses, and have been forced to file this Motion without the benefit of such responses.  [5:08-CV-00215 JF Dkt No. 27-29.]  In

-12-

SFCA_1424912.3

1  Hospitals could only conclude that the Weinberg Firm was, in fact, representing UHW, and that

2  its appearances on "Local 715's" behalf were made under authority of the rejected Servicing

3  Agreement.  Therefore, the Hospitals refused to participate in arbitration proceedings with

4  Weinberg attorneys absent assurances that the appearance was made directly on behalf of Local

5  715 and not pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 53 & Exh. RR.]  To date,

6  neither the Weinberg Firm nor the Altshuler Firm have provided the Hospitals with the requested

7  assurance.[11]

8  ## C.    The Grievance

9  The grievance at issue (the "Dues Grievance") was filed on May 22, 2007 and alleged

10  that the Hospitals' refusal to remit dues to Local 715 violated the CBA.  [Quintel Decl. ¶ 68 &

11  Exh. UU.]  On May 30, 2007, Ms. Quintel faxed a letter to Chief Steward Jesus Andrade,

12  informing him that the Hospitals were refusing the process the Dues Grievance due to "Local

13  715's" evident dissolution.  [Quintel Decl. ¶ 69 & Exh. VV.]  The instant petition to compel was

14  filed on January 11, 2008.  [Dkt. No. 1.]

15  ## III.    DISCUSSION

16  ### A.    Legal Standards Applicable To Summary Judgment Motions

17  Summary judgment is appropriate "if the pleadings, depositions, answers to

18  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

19  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

20  matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of

21

22  addition, the Hospitals have also filed a motion to continue the hearing on the present motion and
    related deadlines due to the failure of the union entities to provide discovery responses.  [5:08-
23  CV-00216, Dkt. #28-30; 5:08-CV_01726, Dkt. # 11-13; and 5:08-CV-01727, Dkt. #11-13]  It is
    also significant that Local 715 itself filed a charge with the NLRB against the Hospitals alleging
24  that the Hospitals unlawfully refused to deal with its purported trustee.  Region 32 of the NLRB,
    however, dismissed the charge when Local 715 refused or failed to provide any evidence that it
25  actually existed, as requested by the NLRB.  [Arnold Decl. ¶ 73 & Exh. MMM.]

26  [11] The Hospitals have filed charges with the NLRB based on Local 715's refusal to respond to its
    information requests  [Quintel Decl. ¶ 46 Exh. DD; Arnold Decl. ¶ 54 & Exh. SS-TT.]  The
27  Board has issued a complaint on these charges and a hearing was held on May 6, 2008.  [Arnold
    Decl. ¶ 71-73 & Exh. LLL.]  A decision has yet to issue.  [Arnold Decl. ¶ 73.]

28

informing the court of the basis for its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56). The non-moving party is not entitled to rest on the mere allegations of its pleading, but must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Material facts "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine basis of material fact if, on the record taken as a whole, a rational trier of fact could not find in favor of a party opposing summary judgment. *See Matushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1985).

### B.    The Petition Is Not Timely

Petitions to compel arbitration under 29 U.S.C. § 185 (known as "Section 301" of the Labor Management Relations Act), are subject to a six-month statute of limitations. *United Steelworkers Of America v. Retirement Income Plan for Hourly Rated Employees Of Asarco, Inc.*, 512 F.3d 555, 561 (9th Cir. 2006). The limitations period "begins to run from the time one party makes it clear that it will not submit the matter to arbitration." *Id.* Here, the Hospitals gave unequivocal notice that they would not arbitrate the Dues Grievance by their letter sent by fax and mail on May 30, 2007. [Quintel Decl. ¶ 69 & Exh. VV.] That letter informed "Local 715" that the subject matter of the Dues Grievance was "not one covered by the Agreement or its grievance and arbitration procedures" and that "we do not intend to process" the grievance. [Id.] The Petition was not filed until January 11, 2008, over seven (7) months later. [Dkt. No. 1.] Therefore "Local 715's" Section 301 action must be dismissed.

### C.    The Hospitals Are Not Required To Arbitrate The Grievance Because Local 715 Has Effectively Ceased To Exist

It is well-established that, where the NLRB certifies a union as the exclusive bargaining representative of an employer's workers pursuant to the NLRA, the employer is not only

-14-

1   obligated to bargain with that union, but is prohibited from bargaining with any other union.

2   *Medo Photo Supply Corporation v. National Labor Relations Board*, 321 U.S. 678, 673-674

3   (1944); *Nevada Security Innovations, Ltd*., 341 NLRB 953, 955 (2004).  It follows that, where

4   the certified union has ceased to exist, the employer's bargaining obligation is at an end.  *Brooks*

5   *v. National Labor Relations Board*, 348 U.S. 96, 98 (1954); *Pioneer Inn Associates v. National*

6   *Labor Relations Board*, 578 F.2d 835, 839 (9th Cir. 1978).

7           Likewise, where an employer and the certified union negotiate a collective bargaining

8   agreement providing for arbitration of disputes, and the union subsequently ceases to exist, the

9   employer no longer has any obligation to arbitrate because only the union has standing to compel

10  arbitration.  *Moruzzi v. Dynamics Corporation Of America*, 443 F.Supp. 332, 336-337 (S.D.N.Y.

11  1977); *Lorber Industries Of California v. Los Angles Printworks Corporation*, 803 F.2d 523, 525

12  (9th Cir. 1986) (The obligation to arbitrate "may not be invoked by one who is not a party to the

13  agreement").  Where the certified union has ceased to exist, its former officials or representatives

14  do not have standing to compel arbitration under its name.  Thus, in *Moruzzi*, where the union

15  went out of existence, its former president "became neither the successor to nor the assignee of

16  the defunct [union] by adopting its name" and he therefore lacked standing to compel arbitration

17  in the former union's name.  *Moruzzi, supra*, 443 F.Supp. at 337.  Indeed, the Court lacks

18  jurisdiction over a suit by or against a union, where that union does not actually exist.

19  *International Brotherhood Of Boilermakers, Iron Ship Builders, Black-Smiths, Forgers And*

20  *Helpers, AFL-CIO v. Local Lodge D354*, 897 F.2d 1400, 1402-1403 (7th Cir. 1990) ("two

21  opposing parties are minimally required to create a case or controversy.").

22          In this case the undisputed evidence demonstrates that, on or around March 1, 2007,

23  pursuant to an explicit plan adopted by the SEIU International, Local 715, the only party with

24  standing to compel arbitration, effectively ceased to exist.  The "trustee" can become neither the

25  successor to, nor the assignee, of the no longer existing Local 715, nor may Local 715 be

26  resurrected once it ceased to exist as a viable labor organization.  *Sisters Of Mercy Health*

27  *Corporation*, 277 NLRB 1353, 1354 (1985); *Moruzzi, supra*, 443 F.Supp. at 337.  Therefore, the

28  ///

SFCA_1424912.3

1   Hospitals have no obligation to arbitrate the grievance in question.  Indeed, the Court lacks

2   jurisdiction over this case.

3           **(1)       SEIU Adopted And Implemented A Plan That Expressly Called For**

4                   **The Dismemberment And Dissolution Of Local 715**

5           It cannot be disputed that SEIU developed and adopted a reorganization plan for

6   California SEIU locals.  It is further undisputed that the plan openly called for the bulk of Local

7   715 to be absorbed by Local 521, and for Local 715's duties at private hospitals, including those

8   at the Hospitals, to be given over to UHW.  [Inciardi Decl. Exh. T p. 42-43; 61-62 & 65; Quintel

9   Decl. Exh. K p. 2-4]  In the meantime, the Joint Report noted that UHW was "actually servicing"

10  private hospital employees represented by Local 715 pursuant to servicing agreements.[12]

11  [Inciardi Decl. Exh. T p. 16.]

12          Although neither the Joint Report nor the accompanying memorandum expressly state

13  that Local 715 would no longer exist after the contemplated reorganization, it is clear that this is

14  what was contemplated and was the *de facto* result as no mention is made of any future role for

15  Local 715 after all of its former functions were merged into other locals.

16          **(2)       The Bulk Of Local 715's Former Membership And Functions Were**

17                  **Merged Into Local 521**

18          In January, 2007, International President Stern ordered that the SEIU reorganization plan

19  be implemented as soon as practicable.  [Inciardi Decl. Exh. U.]  It cannot be disputed that, after

20  President Stern's order, Local 715 publicly announced that it was "in the process of transitioning

21  to our new local 521" and that the Local 715 Website would be "taken down" on the last day of

22  February, 2007.  [Quintel Decl. ¶ 30 & Exh. P.]  It is further undisputed that, after March 1,

23  2007, Local 521 publicly announced that Local 715 and other locals "have come together" and

24  ///

25

26  _____

    [12] The language used in the joint report is telling.  It did not state that UHW was "assisting" or
    "providing services" to Local 715.  Rather, it was "actually servicing" the Bargaining Unit.

27  There was no qualification that it was doing so on behalf of Local 715.  This choice of language
    reflect the reality of the situation – pursuant to the International's wishes, Local 715 had stepped

28  aside to allow UHW to become the bargaining representative in substance, if not in name.

SFCA_1424912.3

1    formed "one larger, more powerful local" and that, "On March 1, 2007, the resources of all five

2    locals were transferred to Local 521."[13]  [Quintel Decl. ¶ 40 & Exh. X.]

3            **(3)**      **Local 715's Private Hospital Members And Functions Were**

4                    **Transferred To UHW**

5          Apparently, due in large part to the Hospitals' resistance, the transfer of Local 715's

6    private hospital operations to UHW was conducted less openly than the merger into Local 521.

7    [Inciardi Decl. Exh. W p. 4.]  However, it is indisputable that the transfer did take place, and

8    Local 715 has ceased to exist.

9            **a)**      **Under The Guise Of An Invalid Servicing Agreement, Local**

10                   **715 Assigned Its Representative Functions To UHW**

11         The process of merging Local 715's private hospital operations into UHW began with the

12   execution of servicing agreements through which UHW replaced Local 715 as the entity actually

13   carrying out representative duties.  [Inciardi Decl. Exh. T p. 16.]  In the case of the Hospitals, the

14   applicable servicing agreement was executed in February, 2006.  [Arnold Decl. Exh. CC.]

15   Thereafter, although Local 715 nominally retained its status as the bargaining representative,

16   UHW aggregated to itself all significant representational duties (or at least attempted to do so).

17   Thus, admitted employees of UHW were assigned to deal with the Hospitals regarding matters of

18   contract negotiation and employee grievances, and the Hospitals were instructed to send all

19   correspondence directly to UHW employees at UHW's San Francisco office.  [Quintel Decl. ¶ 1-

20   13 & Exh. B-C.]  UHW employees submitted grievances on behalf of Bargaining Unit

21   employees on UHW letterhead, and referred to those employees as members of UHW.  [Quintel

22   Decl. ¶ 15 Exh. D.]  Greg Pullman confirmed in an e-mail that UHW employees "handling ***all***

23   ***representation matters*** for SEIU Local 715."  [Quintel Decl. ¶ 18 & Exh. F (emphasis

24   supplied).]  At the same time, UHW employee Jocelyn Olick confirmed in an e-mail that she and

25   ///

26   

27   [13] In an apparent effort to maintain the fiction of its continued existence, the Local 715 Website
     was subsequently re-established.  However, the website was virtually devoid of content.  [See
28   Declaration Of Scott P. Inciardi, ¶ 2-23 & Exh. A-B.]

SFCA_1424912.3

the other UHW employees assigned to "service" the Bargaining Unit did not work for Local 715.[14] [Quintel Decl. ¶ 20 & Exh. H.]

### b) UHW Began Receiving Dues Deducted From Bargaining Unit Members Paychecks

Further evidence that UHW had stepped into the shoes of Local 715 is also demonstrated by the fact that, in early April, 2006 UHW began receiving from Local 715 the dues deducted from Bargaining Unit employees' paychecks and sent to Local 715 by the Hospitals. This is demonstrated by the undisputed fact that persons admittedly acting on behalf of UHW demanded information from the Hospitals for the express purpose of processing the dues deducted from Bargaining Unit employees' paychecks (although the Servicing Agreement called for UHW to provide "services" free of charge). [Quintel Decl. ¶ 16-17 & Exh. E.]

### c) Bargaining Unit Employees Were Asked To Agree To Change Their Union Affiliation To UHW

In September, 2006, Bargaining Unit employees were asked to ratify the reorganization plan adopted by SEIU by means of a state-wide vote. The balloting material distributed to Bargaining Unit employees expressly stated that "Hospital workers at . . . Stanford/Lucille Packard Children's Hospital . . . will change their affiliation to United Healthcare Workers – West." [Quintel Decl. ¶ 26-27 & Exh. M-N.]

///

///

///

///

---

[14] At the same time that SEIU was carrying out a *de facto* transfer of Local 715's members and functions to UHW, Local 715's representatives attempted to conceal the true nature of what was transpiring. On June 14, 2006, shortly after the formal adoption of the SEIU reorganization plan calling for the transfer of Local 715's private hospital operations to UHW and the dissolution of Local 715, Greg Pullman wrote a letter to Mr. Arnold claiming that Local 715 had asked two (2) UHW employees "to help enforce the collective bargaining agreement" and that "[t]hat is all that is happening." [Arnold Decl. ¶ 34 & Exh. AA.] When correspondence on UHW letterhead or claiming to be on behalf of UHW members was rejected, it was simply re-submitted on Local 715 letterhead [Quintel Decl. ¶ 60 & Exh. OO.]

SFCA_1424912.3

**d)** **President Stern Ordered The "Reorganization" Of Local 715**

**Into UHW, And Chief Shop Steward Robert Rutledge**

**Admitted That Local 715 Had Ceased To Exist**

On January 2, 2007, International President Stern issued the order that the employees formerly represented by Local 715 were to be "reorganized" (a euphemism for merged) into other locals, and specifically stated that the Hospitals' employees formerly represented by Local 715 were to be "reorganized" into UHW as soon as practicable. [Inciardi Decl. Exh. U.]

On January 31, 2007, Local 715's Chief Shop Steward, Robert Rutledge stated in an e-mail that "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006."[15] [Quintel Decl. ¶ 28-29 & Exh. O.] Mr. Rutledge confirmed this statement in a meeting with Ms. Quintel two (2) days later in which he stated that Local 715 no longer represented the Bargaining Unit, that it had ceased to exist, and that UHW now represented the Bargaining Unit. [Quintel Decl. ¶ 29.]

**e)** **"Local 715" Is Represented By UHW's Legal Counsel**

Historically, Local 715 was represented by the Weinberg Firm, which has also long represented UHW. [Arnold Decl. ¶ 9-10.] In June, 2007, SEIU purported to place "Local 715" under trusteeship, and the trustee, Bruce "Rusty" Smith designated new counsel for "Local 715" – the Altshuler Firm. [Arnold Decl. ¶ 40 & Exh. FF.] Nevertheless, after the appointment of the Altshuler Firm as "Local 715's" counsel the Weinberg Firm continued to request to bargain, appear in grievance and arbitration proceedings, and issue correspondence purportedly on behalf of "Local 715." [Arnold Decl. ¶ 47; 49; 55; & 65 & Exh. UU & EEE; Quintel Decl. ¶ 54-55 & Exh. K-L.] Despite repeated requests by the Hospitals, neither the Weinberg Firm, nor the Altshuler Firm, nor Mr. Smith himself, were willing to make a simple representation that the Weinberg Firm was representing "Local 715" directly. [Arnold Decl. ¶ 49-53 & Exh. NN-RR.] Their refusal – even when under legal compulsion – to make this simple representation can only

---

[15] By linking the defunct status of Local 715 with the Servicing Agreement, Mr. Rutledge thus confirmed what was apparent – that the execution of the Servicing Agreement was an integral part of the plan to disband Local 715 and was designed to further that purpose.

SFCA_1424912.3

1  lead to the conclusion that the Weinberg Firm is not representing "Local 715" directly.  Instead,

2  it is retained by and represents UHW and is providing legal services pursuant to the invalid

3  Servicing Agreement.  Its position, therefore, is no different than UHW itself, which has

4  attempted to assume the representative duties formerly held by the now defunct Local 715 under

5  the guise of the Servicing Agreement.

6            **f)       UHW Holds Itself Out As The Representative Of The**

7                          **Bargaining Unit**

8            Notwithstanding the claims that "Local 715" continues to exist and represent the

9  Bargaining Unit, UHW publicly asserts that it, not "Local 715", represents the Bargaining Unit.

10  The UHW Website lists "Stanford University Medical Center" among the facilities that it claims

11  to represent and lists Myriam Escamilla as the "UHW Representative" assigned to the facility.

12  [Inciardi Decl. ¶ 29-30 & Exh. C20-C22.]  The UHW Website also contains a document listing

13  those collective bargaining agreements scheduled to expire in 2008 for the units represented by

14  UHW.  "Stanford Univ. Med. Ctr./ Lucille Packard" is among the contracts listed.  [Inciardi

15  Decl. ¶ 27 & Exh. D p. 3.]

16            **(4)       As Local 715 Has Effectively Ceased To Exist, The Hospitals Have No**

17                          **Obligation To Arbitrate The Dues Grievance**

18            As the above evidence demonstrates, SEIU's plan to dissolve Local 715 was carried out

19  and, as of March 1, 2007, Local 715 was no more.  Given this, two conclusions necessarily

20  follow.  First, the Hospitals are not obligated to arbitrate Dues Grievance because the only party

21  with standing to compel arbitration no longer exists.  Second, this Court lacks jurisdiction over

22  this case because the party purportedly maintaining the action has been shown to be fictitious.

23  Therefore, the Court should dismiss the case.

24            **(5)       The Maintenance Of "Local 715" As A Sham Organization Does Not**

25                          **Change The Result**

26            Various individuals have attempted to maintain the fiction that "Local 715" continues to

27  exist, chiefly by baldly representing that it continues to exist, issuing correspondence in its name,

28  and appointing a "trustee" for it.  However, these efforts are a transparent attempt to hide the

-20-

SFCA_1424912.3

1    reality of what has occurred.  It should be no difficult task for an ongoing organization to

2    demonstrate something as basic as its simple existence.  Yet, at every stage where "Local 715"

3    has been called upon to establish that it exists, it has declined or openly refused to do so.

4    [Arnold Decl. ¶ 32; 34; 40-42; 49-53; 64-65 & Exh. Z-AA; FF-GG; NN-RR; DDD-EEE.]  It

5    refused to provide any information whatsoever in response to the Hospitals' information

6    requests, although it is required to do so under the NLRA.[16]  [Arnold Decl. ¶ 71 & Exh. LLL.]

7    Further, "Local 715" has failed to properly respond to discovery requests issued in this matter.

8    Similarly, Weinberg Firm attorneys have refused to state that they are not actually retained by

9    UHW.  Indeed, when "Local 715" filed a charge with the NLRB alleging that the Hospitals

10   unlawfully refused to deal with its "Trustee," Region 32 dismissed the charge after "Local 715"

11   failed to provide any evidence that it actually existed.  [Arnold Decl. ¶ 73 & Exh. MMM.]

12          Thus, it is clear that "Local 715" exists, if at all, only on paper, and is, in fact, a sham

13   designed to hide the fact that the former organization has been dissolved.  Where a labor

14   organization has actually ceased to exist, courts will reject attempts to compel arbitration by

15   persons claiming to be that organization.  *Moruzzi, supra*, 443 F.Supp. at 336-337.  Simply

16   asserting the organization's existence in an effort to resurrect it is insufficient.

17          **D.    Whether Or Not Local 715 Continues To Exist, The Hospitals Are Not**

18                 **Required To Participate In Grievance And/Or Arbitration Proceedings With**

19                 **Representatives Of UHW Because UHW Is Not The Certified Representative**

20                 **And The Servicing Agreement Is Not Valid**

21          Even assuming for the sake of argument only that Local 715 continues to exist (which the

22   Hospitals by no means concede), the Hospitals are still not obligated to arbitrate the Dues

23   Grievance because the actual party seeking to arbitrate with the Hospitals is not Local 715, but

24   UHW, and UHW has no standing to compel the Hospitals to arbitrate.

25   ///

26

27   [16] In fact, Region 32 of the NLRB has come to the conclusion that Local 715's refusal to produce
     requested information on its status and legal representation was unlawful and issued a complaint

28   on that basis.  [Arnold Decl. ¶ 71 & Exh. LLL.]

SFCA_1424912.3

1    "Local 715" and the Weinberg attorneys who have attempted to appear on its behalf with

2    respect to these grievances and other grievances filed since March, 2007 have been unwilling to

3    state that such appearances were, or would be, made on behalf of "Local 715" directly, although

4    it would be in their interest to do so were that the case.[17]  [Arnold Decl. ¶ 64-66 & Exh. DDD-

5    FFF.]  This behavior is tantamount to an admission that such appearances were not, and would

6    not be, directly on behalf of "Local 715."  Instead, the evidence reflects that the Weinberg

7    attorneys who are seeking to arbitrate with the Hospitals are retained by UHW and are appearing

8    for "Local 715" pursuant to the invalid Servicing Agreement, which the "trustee" has attempted

9    to resurrect.

10    "Local 715" may argue that UHW attorneys are entitled to represent "Local 715"

11    pursuant to the rejected Servicing Agreement.  However, while it is established that a union may

12    assign agents to appear on its behalf, what is actually transpiring is an invalid attempt to transfer

13    "Local 715's" bargaining duties wholesale to UHW.  The Hospitals are not obliged to acquiesce

14    in this attempt, and are actually prohibited from doing so.

15    The rejected Servicing Agreement authorizes UHW to provide "services" to "Local 715"

16    consisting of representation in grievance and arbitration proceedings, representation in labor

17    management meetings, and assistance to members appearing before the NLRB.[18]  [Arnold Decl.

18    Exh. CC.]  Yet, as discussed above, after the Servicing Agreement went into effect, UHW simply

19    replaced Local 715 with respect to all aspects of the bargaining relationship.  Additionally, as

20    ///

21

22    [17] In a letter dated December 14, 2007, Mr. Smith stated that he authorized the Weinberg Firm to
     "represent the Union all (sic) aspects of the arbitration process."  [Quintel Decl. ¶ 56 & Exh.
23    MM.]  This letter, like the representations made by the Weinberg Firm itself on this issue, was
     carefully crafted in such a way as to fail to address the essential question – was the Weinberg
24    Firm's representation direct or pursuant to the Servicing Agreement, which Mr. Smith asserted
     remained in full force and effect.  Mr. Smith's representation was completely consistent with
25    continued representation through the Servicing Agreement.

26    [18] The Servicing Agreement calls upon Local 715 and UHW to take steps to enforce the
     Servicing Agreement in the event that it is rejected by the Hospitals, which they have not done.
27    The Servicing Agreement also calls upon Local 715 resume representing the Bargaining Unit
     pending its enforcement in the event that the Hospitals reject the Servicing Agreement, which
28    Local 715 has not done.  [Arnold Decl. Exh. CC.]

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO:  5:08-CV-00215 JF

SFCA_1424912.3

discussed previously, the plan adopted by the SEIU expressly called for Local 715's representational duties to be transferred to UHW.

It has been recognized that, under the National Labor Relations Act, one union may use agents or experts from another union to act on its behalf in formal labor negotiations. *Goad Company*, 333 NLRB 677, 679 (2001). However, a union may not use the purported appointment of agents to effectuate a *de facto* change of the bargaining representative, and under such circumstances, the employer is under no obligation to deal with the purported agents. *Goad, supra*, 333 NLRB at 680 (employer not obligated to deal with purported agent where certified union "did not simply enlist the aid of an agent . . . it transferred its representational duties and responsibilities.") See also *Sherwood Ford, Inc*, 188 NLRB 131, 133-134 (1971) (Board disregarded agency agreement between unions as "a device, subterfuge, or stratagem" designed to accomplish a *de facto* change of the bargaining agent.).

The same conclusion applies here. Local 715 and UHW have used the invalid Servicing Agreement as a "device, subterfuge, or stratagem" to, in effect, transfer representative status to UHW. Rather than serving as a mere agent, as called for in the Servicing Agreement, UHW has sought to completely supplant Local 715 with respect to every aspect of collective bargaining, leaving "Local 715" as the representative in name only. Given this, the Hospitals are not obligated to (and, in fact, must not) deal with employees and representatives, including Weinberg Firm attorneys, acting pursuant to the rejected Servicing Agreement.[19]

---

[19] Additionally, the relief sought by "Local 715" in the Dues Grievance may be unlawful. Section 302 of the LMRA (29 U.S.C. § 186) states that "[i]t shall be unlawful for any employer . . . to pay, lend or deliver . . . any money or other thing of value" to "any representative of any of his employees who are employed in an industry affecting commerce" or to "any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in any industry affecting commerce." 29 U.S.C. § 186(a). An exception is made, however, "with respect to money deducted from the wages of employees in payment of membership dues in a labor organization" provided that there is a collective bargaining agreement, and provided further that the employer has received a written assignment from each employee from whom wages are to be deducted. 29 U.S.C. § 186(c)(4). Violations of Section 302 are punishable by substantial fines and imprisonment. 29 U.S.C. § 186(d)(2). It is also unlawful for any person to demand, receive or accept payments that would be unlawful under Section 302. 29 U.S.C. § 186(b)(1). Because Local 715 no longer exists, there exists the possibility that remitted dues would be unlawfully received by another labor organization. Alternatively, if Local 715 exists, but has ceased to be the representative, the payments could also be unlawful as to both the Hospitals and Local 715.

-23-

1

2

**E.    If The Court Decides That This Case Presents A Representational Issue On Which It Should Not Rule, It Should Issue A Stay**

3    Although this Court is vested with authority to hear suits for breach of a collective

4    bargaining agreement under Section 301, the NLRB has primary jurisdiction over questions of

5    representation under the NLRA. *Local No 3-193 International Wood-Workers Of America v.*

6    *Ketchikan Pulp Company*, 611 F.2d 1295, 1301 (9th Cir. 1980). This case does not fall within

7    the Board's primary jurisdiction because the Court is not asked to determine the representative

8    status of Local 715. Rather, the Court is asked to decide that the Hospitals did not breach the

9    CBA because Local 715 no longer exists, or because the demand for arbitration is being made by

10   UHW. It is established that a federal court may decide contractual issues under Section 301,

11   even if such issues closely parallel representational issues. *Hotel Employees, Restaurant*

12   *Employees Union, Local 2 v. Marriott Corporation*, 961 F.2d 1464, 1468 (9th Cir. 1992);

13   *Moruzzi, supra*, 443 F.Supp. at 337 (holding that because the union had ceased to exist, those

14   acting in its name had no standing to compel arbitration).[20]

15   Nevertheless, the Hospitals recognize that these issues are closely related to the issue of

16   the representative status of Local 715 because if Local 715 has ceased to exist, then it has

17   necessarily lost its representative status. In the event that the Court determines that it should not

18   make a determination regarding the status of Local 715 because it involves a representational

19   question within the primary jurisdiction of the NLRB, The Court should instead issue an order

20   staying any arbitration proceedings pending resolution of such issue before the NLRB. Such

21   resolution must be on a charge filed by "Local 715" alleging a refusal to recognize or bargain by

22   the Hospitals, as there is no charge that the Hospitals may initiate on this issue. "Local 715",

23   however, has steadfastly refused to file such a charge.

24   ///

25

26

27

28

---

[20] Indeed, because Section 301 requires that the suit in question be by or against a "labor organization," the court is necessarily to make a finding on the status of the purported labor organization, including whether the purported labor organization actually exists. 29 U.S.C. § 185.

SFCA_1424912.3

1   IV.    **CONCLUSION**

2        "Local 715's" Section 301 action should be dismissed with prejudice because it is

3   untimely.  To the extent that the Court reaches the merits of the petition, the Hospitals

4   respectfully submit that the Court should find that, because Local 715 no longer exists, the

5   Hospitals are not required to arbitrate the Dues Grievance, or, in the alternative, that the

6   Hospitals are not required to arbitrate with any person not directly employed or retained by

7   Local 715.

8        Finally, in the event that the Court decides that it cannot resolve the above issues because

9   there exists a representation issue that must be decided by the NLRB, the Hospitals request that

10  the Court order that this matter be stayed until the Board resolves such issue.

11

12  Dated:  July 18, 2008                     FOLEY & LARDNER LLP

13                                            LAURENCE R. ARNOLD
                                              EILEEN R RIDLEY
14                                            SCOTT P. INCIARDI

15

16                                            By:  /s/
                                                   _____
17                                                 EILEEN R. RIDLEY
                                                   Attorneys for Respondents STANFORD
18                                                 HOSPITAL AND CLINICS AND
                                                   LUCILE PACKARD CHILDREN'S
19                                                 HOSPITAL

20

21

22

23

24

25

26

27

28

SFCA_1424912.3

1
2
3
4
5
6
7

8                   **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10

11

12  SERVICE EMPLOYEES                    Case No:  5:08-CV-00215 JF
    INTERNATIONAL UNION, LOCAL 715,
                                         [PROPOSED] ORDER GRANTING
13                Petitioner,            STANFORD HOSPITAL AND CLINICS
                                         AND LUCILE PACKARD CHILDREN'S
14       vs.                             HOSPITAL'S MOTION FOR SUMMARY
                                         JUDGMENT OR, IN THE
15  STANFORD HOSPITAL AND CLINICS        ALTERNATIVE, SUMMARY
    AND LUCILE PACKARD CHILDREN'S        ADJUDICATION OF CLAIMS OR
16  HOSPITAL,                            DEFENSES

17                Respondents.           Date:       August 29, 2008
                                         Time:       9:00 A.M.
18                                       Dept:       Ctrm. 3, 5th Floor

19                                       Judge:      Hon. Jeremy Fogel

20

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

SFCA_1425408.2

1   The motion of Respondents, Stanford Hospital And Clinics and Lucile Packard

2   Children's Hospital (the "Hospitals"), for summary judgment or, in the alternative adjudication

3   of claims or defenses (the "Motion") came on regularly for hearing on August 29, 2008 with

4   Eileen R. Ridley of Foley & Lardner LLP appearing as counsel for the Hospitals and Bruce

5   Harland of Weinberg Roger & Rosenfeld appearing as counsel for Petitioner Service Employees

6   International Union, Local 715 ("Local 715").  After full consideration of the supporting and

7   opposing papers, the evidence submitted by the parties, the oral argument of counsel and the

8   papers and files regarding this matter, and good cause appearing, the Court finds that there is no

9   triable issue of any material fact and that the Hospitals are entitled to judgment as a matter of law

10  under Rule 56 of the Federal Rules Of Civil Procedure for the reasons stated below.

11  **I.      LOCAL 715'S SECTION 301 ACTION IS UNTIMELY**

12          The undisputed facts show that Local 715's action under "Section 301" of the Labor

13  Management Relations Act ("LMRA") (29 U.S.C. § 185) is untimely.  Section 301 actions are

14  subject to a six (6) month limitations period.  *United Steelworkers Of America v. Retirement*

15  *Income Plan for Hourly Rated Employees Of Asarco, Inc.*, 512 F.3d 555, 561 (9th Cir. 2006).

16  The limitations period "begins to run from the time one party makes it clear that it will not

17  submit the matter to arbitration."  *Id.*

18          The Court finds that the following facts are material and undisputed:

19  •       The grievance at issue (the "Dues Grievance") was filed on May 22, 2007 and alleged

20          that the Hospitals' refusal to remit dues to "Local 715" violated a collective bargaining

21          agreement between the parties.  [Declaration of Laurie J. Quintel ("Quintel Decl.") ¶ 68

22          & Exh. UU.]

23
24  •       On May 30, 2007, the Hospitals' Director of Employee/Labor Relations, Laurie J.

25          Quintel, faxed a letter to Chief Steward Jesus Andrade, informing him that the Hospitals

26          were refusing the process the Dues Grievance.  [Quintel Decl. ¶ 69 & Exh. VV.]

27  •       The instant petition to compel was filed on January 11, 2008.  [Dkt. No. 1.]

28

---

1

SFCA_1425408.2

1    Because the Hospitals gave unequivocal notice that they would not arbitrate the Dues

2    Grievance by their letter sent by fax and mail on May 30, 2007, and Local 715's Section 301

3    action was not filed until over seven (7) months later, the action is untimely.  Therefore the Court

4    ORDERS that judgment SHALL BE ENTERED against Local 715 and in favor of the Hospital

5    on that basis and Local 715's Petition SHALL BE AND IS HEREBY DISMISSED WITH

6    PREJUDICE.

7    **II.**    **LOCAL 715 HAS CEASED TO EXIST**

8    In the alternative, the Hospitals are not required to arbitrate the Dues Grievance because

9    Local 715 has ceased to exist.

10    The Court finds that the following facts are material and undisputed:

11    •    In 1998, the National Labor Relations Board ("NLRB" or the "Board") issued an order

12    (the "Certification") certifying Local 715 as the exclusive collective bargaining

13    representative of a unit of Hospital employees (the "Bargaining Unit") as set forth in the

14    Certification.  [Declaration of Laurence R. Arnold In Support of Motions ("Arnold Decl.)

15    Exh. A.]

16
17    •    Thereafter, the Hospitals and Local 715 engaged in collective bargaining resulting in a

18    series of collective bargaining agreements.  The current collective bargaining agreement

19    (the "CBA") became effective on January 20, 2006, and is scheduled to expire on

20    November 4, 2008.  [Arnold Decl. Exh. B.]

21    •    Article 1 of The CBA contains a "Recognition Clause" which states that, pursuant to the

22    Board's Certification, the Hospitals recognized Local 715 "as the sole and exclusive

23    representative for the purpose of collective bargaining" with respect to Bargaining Unit

24    employees.  [Arnold Decl. Exh. B.]

25    •    Article 26 of the CBA contains a grievance and arbitration procedure through which

26    alleged violations of the CBA may be challenged.  However, only Local 715 may appeal

27    a grievance to arbitration.  [Arnold Decl. Exh. B.]

28

2

---

- Between February 18 and February 20, 2006, Local 715 entered into a "Servicing Agreement" with Service Employees International Union, United Healthcare Workers – West ("UHW"). [Arnold Decl. ¶ 36 & Exh. CC; Declaration of Scott P. Inciardi In Support of Motions ("Inciardi Decl.") Exh. EE.]

- The Servicing Agreement provided that UHW would provide certain "professional services" to Local 715 at no cost, including "Representation in the grievance procedure and at arbitration hearings," "Representation at labor-management meetings," and "Assistance to members appearing before the National Labor Relations Board on behalf of the Local 715 Chapter at the Stanford Facility." [Arnold Decl. Exh. CC.]

- The Servicing Agreement further provided that, Local 715 and UHW would take such steps as were necessary to enforce the agreement, including initiating proceedings before the NLRB, in the event that the Servicing Agreement was rejected by the Hospitals." [Arnold Decl. Exh. CC.]

- The Servicing Agreement was to be effective as of March 1, 2006. [Arnold Decl. Exh. CC.]

- On February 28, 2006, Greg Pullman, then Local 715's Staff Director, informed Laurie Quintel, the Hospitals' Director of Employee and Labor Relations, that she should work with an employee of UHW named Ella Hereth in connection with the settlement of grievances and unfair labor practice charges. [Quintel Decl. ¶ 9.]

- Around the same time, another UHW employee named Rachel Deutsch told Ms. Quintel that UHW would be taking over representation for the Hospitals. [Quintel Decl. ¶ 10.]

- Ms. Quintel sought clarification from Mr. Pullman, whereupon Mr. Pullman told Ms. Quintel that "Local 715 represents the workers covered by our agreement" but that "Local 715 has asked SEIU UHW to service this unit in many ways on a day-to-day

3

SFCA_1425408.2

1    basis."  [Quintel Decl. ¶ 11-12 & Exh. B.]

2

3    •    Between March and May, 2006, the functions that had formerly been carried out by Local

4    715 personnel were carried out exclusively by UHW employees.  UHW employees filed

5    grievances on UHW stationery, some of which referred to Bargaining Unit members as

6    "members" of UHW.  [Quintel Decl. ¶ 15 & Exh. D.]  Ms. Hereth sent a letter to Ms.

7    Quintel instructing to "direct all SEIU correspondence" to UHW employees at UHW's

8    San Francisco office.  [Quintel Decl. ¶ 14 & Exh. C.]  On May 22, 2006, Jocelyn Olick, a

9    UHW employee and purported servicing agent under the Servicing Agreement, stated in

10   an e-mail that "I and Ella Hereth do not work for SEIU 715.  SEIU-UHW is doing the

11   representation work here at Stanford Hospital."  [Quintel Decl. ¶ 20 & Exh. H.]  On the

12   same day, Mr. Pullman stated in an e-mail that "Jocelyn Olick, Rachel Deutch and Ella

13   Hereth out of the SEIU UHW San Francisco office are handling all representation matters

14   for SEIU Local 715."  [Quintel Decl. ¶ 20 & Exh. H.]  Ms. Olick also purported to have

15   authority to accept changes to the CBA.  [Quintel Decl. ¶ 21 & Exh. I.]

16   •    On or around March 28, 2006, W. Daniel Boone of the law firm Weinberg Roger &

17   Rosenfeld, which historically represented Local 715, wrote a letter to Laurence R.

18   Arnold, an attorney who represents the Hospitals, which referred to "United Healthcare

19   Workers – West (formerly SEIU, Local 715)."   [Arnold Decl. ¶ 26 & Exh. S.]

20

21   •    In early April, 2006, UHW employee Phyllis Willett told Ms. Quintel that  when the

22   Hospitals remitted union dues, they needed to provide the social security numbers of the

23   relevant employees to help UHW identify them.  [Quintel Decl. ¶ 16.]

24   •    Around April 17, 2006, Ms. Quintel received a letter from William A. Sokol of the

25   Weinberg Firm in which he stated "I am writing on behalf of SEIU United Healthcare

26   Workers West" and requested that the Hospitals provide information pertaining to

27   Bargaining Unit employees, and the dues deducted from their paychecks.  [Quintel Decl.

28

4

¶ 17 & Exh. E.]

- In May and June, 2006, Hospitals informed Local 715 that they did not consent to any transfer of bargaining rights from Local 715 to UHW, and that the Hospitals would not deal with employees of UHW.  [Quintel Decl. ¶ 19 & Exh. G; Arnold Decl. ¶ 32 & Exh. Z.]

- In June, 2006, Hospitals requested information from Local 715 regarding the organization's status and the role of UHW.  [Arnold Decl. ¶ 32 & Exh. Z.]

- On June 9, 2006 the Service Employees International Union ("SEIU" or the "International") issued a document titled "Hearing Officers' Joint Report And Recommendations" (the "Joint Report").  The Joint Report outlined a plan to reorganize various SEIU Locals (the "SEIU Reorganization Plan").  The Joint Report noted, "Local 715 is the certified representative of employees at Stanford and Lucille (sic) Packard Hospitals" but that "UHW is actually servicing employees in these facilities  . . . pursuant to servicing agreements."  [Inciardi Decl. Exh. T p. 16.]  The Joint Report concluded that, in order to maximize local union strength, the jurisdiction of various local unions should be changed.  With respect to government employee unions, the report recommended the creation of new local unions, that would absorb "a substantial portion" of the membership of existing local unions, including Local 715.  [Inciardi Decl. Exh. T p. 40.]  The Joint Report also recommended that, "the affiliation of private healthcare units represented by Locals 727, 715, and 2028 should be changed to UHW as soon as feasible."  [Inciardi Decl. Exh. T p. 65.]

- On June 11, 2006, Andrew L. Stern, International President of SEIU, issued a memorandum to "Affected SEIU Local Unions in California" announcing that SEIU had decided to adopt the recommendations outlined in the Joint Report.  The memorandum confirmed that "Private Sector Hospital units currently represented by Locals 535, 707,

5

715, 2028, and 4988 will merge into UHW." [Quintel Decl. ¶ 23 & Exh. K at p. 4.]

• Hospitals received copies of the Servicing Agreement in mid August and reviewed it. [Quintel Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 36-38 & Exh. CC-EE.] The Hospitals concluded, based upon the evidence that Local 715 had abdicated its representative duties and assigned them to UHW, that the Servicing Agreement was invalid and rejected it.

• Local 715 was informed of the Hospitals' rejection of the Servicing Agreement on or around August 29, 2006, and was further informed that the Hospitals would not deal with employees of UHW acting pursuant to the Servicing Agreement. [Arnold Decl. ¶ 38 & Exh. EE.]

• In September, 2006, Bargaining Unit employees were asked to ratify the reorganization plan adopted by SEIU by means of a state-wide vote. The balloting material distributed to Bargaining Unit employees expressly stated that "Hospital workers at . . . Stanford/Lucille Packard Children's Hospital . . . will change their affiliation to United Healthcare Workers – West." [Quintel Decl. ¶ 26-27 & Exh. M-N.]

• On January 2, 2007, International President Stern issued an "Order Of Reorganization" to various SEIU locals, including Local 715. [Inciardi Decl. Exh. U.] President Stern ordered that all workers represented by Local 715, with certain exceptions, be "reorganized into SEIU Local 521." President Stern further ordered that "all . . . Stanford/Lucille (sic) Packard Hospital workers be, and are hereby, reorganized into SEIU Local UHW." [Inciardi Decl. Exh. U.] Such "reorganization" was to take place as soon as practicable.

• On January 31, 2007, Chief Shop Steward Robert W. Rutledge, stated in an e-mail that, "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006." [Quintel Decl. ¶ 28 & Exh. O.] Copies of the e-mail were sent to Ms. Olick and UHW employee Kim Tavaglione, neither of whom

6

1    objected to Mr. Rutledge's statement.

2

3    •    At a meeting with Ms. Quintel on or around February 2, 2007, Mr. Rutledge repeated his

4         assertion that Local 715 no longer existed.  He also stated that Local 715 no longer

5         represented employees at the Hospitals, and that they were now represented by UHW.

6         [Quintel Decl. ¶ 29.]

7    •    In late January, Local 715 prominently posted a statement on its website, located at

8         http://www.SEIU715.org, that "We are in the process of transitioning to our new local

9         521.  This web site will be taken down on Feb. 28.  On March 1, our new Local's web

10        site www.seiu521.org will have your chapter pages and other information."  [Quintel

11        Decl. ¶ 30 & Exh. P.]

12

13   •    Beginning on or around March 1, visitors to Local 715's website could no longer access

14        the former site, but were automatically redirected to the website of Service Employees

15        International Union, Local 521 ("Local 521"), located at http://www.SEIU521.org.  Local

16        521's website contained a prominent statement that  five local unions, including Local

17        715 "have come together . . . by forming one larger, more powerful local."  [Quintel

18        Decl. ¶ 32 & Exh. R.]  Another page referenced benefits available to "former SEIU Local

19        715 members."  [Quintel Decl. ¶ 32 & Exh. R.]

20   •    On or around March 5, 2007, Local 715's website contained the following statement:

21        "Five locals (415, 535, 700, 715, and 817) have come together to cover the North Central

22        region by forming one larger, more powerful local.  On January 2, 2007, our new local

23        received its charter.  On March 1, 2007, the resources of all five locals were transferred to

24        Local 521."  [Quintel Decl. ¶ 40 & Exh. X.]

25   •    As of March 2, 2007, UHW's website, located at http://SEIU-UHW.org, contained an

26        assertion that UHW represented the Hospitals' employees.  [Quintel Decl. ¶ 34 & Exh.

27        S.]  UHW has continued to claim to represent the Hospitals' employees on its website.

28

7

[Inciardi Decl. ¶ 24 & 29-30 & Exh. C21-C22.]

• The dues deduction authorization forms, by which the individual bargaining unit members authorized deduction and remittance of union dues, authorized remittance of dues specifically to Local 715, and to no other organization. [Quintel Decl. ¶ 35 & Exh. T.]

• In fact, although it was not known to the Hospitals at the time, the actual recipient of the dues being remitted to "Local 715" was Local 521. A document posted on the Local 521 Website titled "Dues Receipts of the year of 2007" showed that, in September, 2007, Local 521 received a payment of dues totaling $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had been assigned to the SHC/LPCH Bargaining Unit). [Arnold Decl. ¶ 57 & Exh. WW.] This was the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for February, 2007, which was $21,949.35. [Quintel Decl. ¶ 38 & Exh. V.]

• On March 2, 2007, the Hospitals informed "Local 715" that, after the remittance of the dues for February, 2007, the Hospitals would no longer remit dues to "Local 715" absent clarification of its status and the identity of the organization that would be receiving the dues. [Quintel Decl. ¶ 36 & Exh. U.] The requested information was not provided, and after March 1, 2007, the Hospitals ceased remitting dues. [Quintel Decl. ¶ 37.] The Hospitals continued to deduct dues from Bargaining Unit employees' checks, but held the dues in a separate bank account established for that purpose, a procedure that continues to date. [Quintel Decl. ¶ 37.]

• On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship." [Inciardi Decl. Exh. Z.] That order stated that, because of the Hospitals' "position" that Local 715 had ceased to exist, and the transfer of the bulk of Local 715's former members and

8

resources to Local 521, SEIU was placing "Local 715" under trusteeship, removing its officers, and appointing Bruce W. ("Rusty") Smith as trustee.  The order confirmed that the SEIU's reorganization plan remained in place and that the remaining members of "Local 715" would be "united with other SEIU healthcare members in SEIU United Healthcare Workers – West."  [Inciardi Decl. Exh. Z.]

- Mr. Smith sent a letter to Ms. Quintel on June 14, 2007 informing her of the trusteeship, that the Servicing Agreement would "remain in full force and effect," and that UHW employees would continue to "service" the Hospitals.  [Quintel Decl. ¶ 48 & Exh. FF.]

- Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm Altshuler Berzon LLP (the "Altshuler Firm") was now representing "Local 715."  Mr. Arnold confirmed this in a conversation with Ms. Chisholm followed by a confirming letter.  [Arnold Decl. ¶ 40 & Exh. FF.]

- To date, the Hospitals have not received any notification that the Altshuler Firm no longer represents "Local 715."  [Quintel Decl. ¶ 57; Arnold Decl. ¶ 40.]

- Since the announcement of the Altshuler Firm's representation of "Local 715," the Hospitals continued to receive correspondence from Weinberg Firm attorneys purporting to act on "Local 715's" behalf in grievance and arbitration matters.  [Arnold Decl. ¶ 49, 55 & 65 & Exh. UU & EEE.]  Weinberg Firm attorneys also appeared in each arbitration hearing that was held after the appointment of the Altshuler Firm as counsel.  [Arnold Decl. ¶ 46 & 49 & Exh. LL.]

- The Hospitals were aware that the Weinberg Firm has historically acted as counsel to UHW and it had previously sent correspondence to the Hospitals representing UHW pursuant to the Servicing Agreement. [Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals became concerned that when the Weinberg Firm acted on behalf of "Local 715," it was actually retained by UHW and acting under authority of the rejected Servicing

9

SFCA_1425408.2

Agreement.  However, when the Hospitals requested information from "Local 715" on this issue "Local 715" and its purported attorneys either failed to respond or openly refused to respond.  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]  The Hospitals concluded that the Weinberg Firm was, in fact, representing UHW, and that its appearances on "Local 715's" behalf were made under authority of the rejected Servicing Agreement. Therefore, the Hospitals refused to participate in arbitration proceedings with Weinberg attorneys absent assurances that the appearance was made directly on behalf of "Local 715" and not pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 53 & Exh. RR.] Neither the Weinberg Firm nor the Altshuler Firm provided the Hospitals with the requested assurance.

The undisputed facts set forth above demonstrate that on or around March 1, 2007, Local 715 was dissolved and that it no longer exists.  It is well-established that, where the NLRB certifies a union as the exclusive bargaining representative of an employer's workers pursuant to the NLRA, the employer is not only obligated to bargain with that union, but is prohibited from bargaining with any other union.  *Medo Photo Supply Corporation v. National Labor Relations Board*, 321 U.S. 678, 673-674 (1944); *Nevada Security Innovations, Ltd.*, 341 NLRB 953, 955 (2004).  Where the certified union has ceased to exist, the employer's bargaining obligation is at an end.  *Brooks v. National Labor Relations Board*, 348 U.S. 96, 98 (1954); *Pioneer Inn Associates v. National Labor Relations Board*, 578 F.2d 835, 839 (9th Cir. 1978).

Likewise, where an employer and the certified union negotiate a collective bargaining agreement providing for arbitration of disputes, and the union subsequently ceases to exist, the employer no longer has any obligation to arbitrate because only the union has standing to compel arbitration.  *Moruzzi v. Dynamics Corporation Of America*, 443 F.Supp. 332, 336-337 (S.D.N.Y. 1977); *Lorber Industries Of California v. Los Angles Printworks Corporation*, 803 F.2d 523, 525 (9th Cir. 1986) (The obligation to arbitrate "may not be invoked by one who is not a party to the agreement").  Where the certified union has ceased to exist, its former officials or representatives do not have standing to compel arbitration under its name.  *Moruzzi, supra*, 443 F.Supp. at 337.

1    Because Local 715 has ceased to exist, it lacks standing to compel arbitration and the

2    Hospitals are not obligated to arbitrate with it.  Therefore the Court ORDERS THAT judgment

3    SHALL BE ENTERED against Local 715 and in favor of the Hospitals and that LOCAL 715's

4    Petition SHALL BE AND IS HEREBY DISMISSED WITH PREJUDICE.

5    **III.    THE HOSPITALS ARE NOT OBLIGATED TO ARBITRATE WITH UHW OR**

6    **ITS REPRESENTATIVES**

7    Whether or not Local 715 continues to exist, the Hospitals are not obligated to arbitrate

8    with UHW or UHW's representatives acting pursuant to the Servicing Agreement because the

9    Servicing Agreement is invalid.

10    The Court finds that the following facts are material and undisputed:

11    •    In 1998, the National Labor Relations Board ("NLRB" or the "Board") issued an order

12    (the "Certification") certifying Local 715 as the exclusive collective bargaining

13    representative of a unit of Hospital employees (the "Bargaining Unit") as set forth in the

14    Certification.  [Arnold Decl. Exh. A.]

15

16    •    Thereafter, the Hospitals and Local 715 engaged in collective bargaining resulting in a

17    series of collective bargaining agreements.  The current collective bargaining agreement

18    (the "CBA") became effective on January 20, 2006, and is scheduled to expire on

19    November 4, 2008.  [Arnold Decl. Exh. B.]

20    •    Article 1 of The CBA contains a "Recognition Clause" which states that, pursuant to the

21    Board's Certification, the Hospitals recognized Local 715 "as the sole and exclusive

22    representative for the purpose of collective bargaining" with respect to Bargaining Unit

23    employees.  [Arnold Decl. Exh. B.]

24

25    •    Article 26 of the CBA contains a grievance and arbitration procedure through which

26    alleged violations of the CBA may be challenged.  However, only Local 715 may appeal

27    a grievance to arbitration.  [Arnold Decl. Exh. B.]

28

11

SFCA_1425408.2

- Between February 18 and February 20, 2006, Local 715 entered into a "Servicing Agreement" with Service Employees International Union, United Healthcare Workers – West ("UHW"). [Arnold Decl. ¶ 36 & Exh. CC; Inciardi Decl. Exh. EE.]

- The Servicing Agreement provided that UHW would provide certain "professional services" to Local 715 at no cost, including "Representation in the grievance procedure and at arbitration hearings," "Representation at labor-management meetings," and "Assistance to members appearing before the National Labor Relations Board on behalf of the Local 715 Chapter at the Stanford Facility." [Arnold Decl. Exh. CC.]

- The Servicing Agreement further provided that, Local 715 and UHW would take such steps as were necessary to enforce the agreement, including initiating proceedings before the NLRB, in the event that the Servicing Agreement was rejected by the Hospitals." [Arnold Decl. Exh. CC.]

- The Servicing Agreement was to be effective as of March 1, 2006. [Arnold Decl. Exh. CC.]

- On February 28, 2006, Greg Pullman, then Local 715's Staff Director, informed Laurie Quintel, the Hospitals' Director of Employee and Labor Relations, that she should work with an employee of UHW named Ella Hereth in connection with the settlement of grievances and unfair labor practice charges. [Quintel Decl. ¶ 9.]

- Around the same time, another UHW employee named Rachel Deutsch told Ms. Quintel that UHW would be taking over representation for the Hospitals. [Quintel Decl. ¶ 10.]

- Ms. Quintel sought clarification from Mr. Pullman, whereupon Mr. Pullman told Ms. Quintel that "Local 715 represents the workers covered by our agreement" but that "Local 715 has asked SEIU UHW to service this unit in many ways on a day-to-day basis." [Quintel Decl. ¶ 11-12 & Exh. B.]

12

SFCA_1425408.2

- Between March and May, 2006, the functions that had formerly been carried out by Local 715 personnel were carried out exclusively by UHW employees.  UHW employees filed grievances on UHW stationery, some of which referred to Bargaining Unit members as "members" of UHW.  [Quintel Decl. ¶ 15 & Exh. D.]  Ms. Hereth sent a letter to Ms. Quintel instructing to "direct all SEIU correspondence" to UHW employees at UHW's San Francisco office.  [Quintel Decl. ¶ 14 & Exh. C.]  On May 22, 2006, Jocelyn Olick, a UHW employee and purported servicing agent under the Servicing Agreement, stated in an e-mail that "I and Ella Hereth do not work for SEIU 715.  SEIU-UHW is doing the representation work here at Stanford Hospital."  [Quintel Decl. ¶ 20 & Exh. H.]  On the same day, Mr. Pullman stated in an e-mail that "Jocelyn Olick, Rachel Deutch and Ella Hereth out of the SEIU UHW San Francisco office are handling all representation matters for SEIU Local 715."  [Quintel Decl. ¶ 20 & Exh. H.]  Ms. Olick also purported to have authority to accept changes to the CBA.  [Quintel Decl. ¶ 21 & Exh. I.]

- On or around March 28, 2006, W. Daniel Boone of the law firm Weinberg Roger & Rosenfeld, which historically represented Local 715, wrote a letter to Laurence R. Arnold, an attorney who represents the Hospitals, which referred to "United Healthcare Workers – West (formerly SEIU, Local 715)."   [Arnold Decl. ¶ 26 & Exh. S.]

- In early April, 2006, UHW employee Phyllis Willett told Ms. Quintel that  when the Hospitals remitted union dues, they needed to provide the social security numbers of the relevant employees to help UHW identify them.  [Quintel Decl. ¶ 16.]

- Around April 17, 2006, Ms. Quintel received a letter from William A. Sokol of the Weinberg Firm in which he stated "I am writing on behalf of SEIU United Healthcare Workers West" and requested that the Hospitals provide information pertaining to Bargaining Unit employees, and the dues deducted from their paychecks.  [Quintel Decl. ¶ 17 & Exh. E.]

13

SFCA_1425408.2

- In May and June, 2006, Hospitals informed Local 715 that they did not consent to any transfer of bargaining rights from Local 715 to UHW, and that the Hospitals would not deal with employees of UHW.  [Quintel Decl. ¶ 19 & Exh. G; Arnold Decl. ¶ 32 & Exh. Z.]

- In June, 2006, Hospitals requested information from Local 715 regarding the organization's status and the role of UHW.  [Arnold Decl. ¶ 32 & Exh. Z.]

- On June 9, 2006 the Service Employees International Union ("SEIU" or the "International") issued a document titled "Hearing Officers' Joint Report And Recommendations" (the "Joint Report").  The Joint Report outlined a plan to reorganize various SEIU Locals (the "SEIU Reorganization Plan").  The Joint Report noted, "Local 715 is the certified representative of employees at Stanford and Lucille (sic) Packard Hospitals" but that "UHW is actually servicing employees in these facilities  . . . pursuant to servicing agreements."  [Inciardi Decl. Exh. T p. 16.]  The Joint Report concluded that, in order to maximize local union strength, the jurisdiction of various local unions should be changed.  With respect to government employee unions, the report recommended the creation of new local unions, that would absorb "a substantial portion" of the membership of existing local unions, including Local 715.  [Inciardi Decl. Exh. T p. 40.]  The Joint Report also recommended that, "the affiliation of private healthcare units represented by Locals 727, 715, and 2028 should be changed to UHW as soon as feasible."  [Inciardi Decl. Exh. T p. 65.]

- On June 11, 2006, Andrew L. Stern, International President of SEIU, issued a memorandum to "Affected SEIU Local Unions in California" announcing that SEIU had decided to adopt the recommendations outlined in the Joint Report.  The memorandum confirmed that "Private Sector Hospital units currently represented by Locals 535, 707, 715, 2028, and 4988 will merge into UHW."  [Quintel Decl. ¶ 23 & Exh. K at p. 4.]

14

SFCA_1425408.2

- In mid-August, the Hospitals received copies of the Servicing Agreement in mid August and reviewed it.  [Quintel Decl. ¶ 24-25 & Exh. L; Arnold Decl. ¶ 36-38 & Exh. CC-EE.] The Hospitals concluded, based upon the evidence that Local 715 had abdicated its representative duties and assigned them to UHW, that the Servicing Agreement was invalid and rejected it.

- Local 715 was informed of the Hospitals' rejection of the Servicing Agreement on or around August 29, 2006, and was further informed that the Hospitals would not deal with employees of UHW acting pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 38 & Exh. EE.]

- In September, 2006, Bargaining Unit employees were asked to ratify the reorganization plan adopted by SEIU by means of a state-wide vote.  The balloting material distributed to Bargaining Unit employees expressly stated that "Hospital workers at . . . Stanford/Lucille Packard Children's Hospital . . . will change their affiliation to United Healthcare Workers – West."  [Quintel Decl. ¶ 26-27 & Exh. M-N.]

- On January 2, 2007, International President Stern issued an "Order Of Reorganization" to various SEIU locals, including Local 715.  [Inciardi Decl. Exh. U.]  President Stern ordered that all workers represented by Local 715, with certain exceptions, be "reorganized into SEIU Local 521."  President Stern further ordered that "all . . . Stanford/Lucille (sic) Packard Hospital workers be, and are hereby, reorganized into SEIU Local UHW."  [Inciardi Decl. Exh. U.]  Such "reorganization" was to take place as soon as practicable.

- On January 31, 2007, Chief Shop Steward Robert W. Rutledge, stated in an e-mail that, "SEIU 715 no longer exists and a service agreement between the former 715 and UHW has been in place since March first of 2006."  [Quintel Decl. ¶ 28 & Exh. O.]  Copies of the e-mail were sent to Ms. Olick and UHW employee Kim Tavaglione, neither of whom

15

objected to Mr. Rutledge's statement.

- At a meeting with Ms. Quintel on or around February 2, 2007, Mr. Rutledge repeated his assertion that Local 715 no longer existed. He also stated that Local 715 no longer represented employees at the Hospitals, and that they were now represented by UHW. [Quintel Decl. ¶ 29.]

- In late January, Local 715 prominently posted a statement on its website, located at http://www.SEIU715.org, that "We are in the process of transitioning to our new local 521. This web site will be taken down on Feb. 28. On March 1, our new Local's web site www.seiu521.org will have your chapter pages and other information." [Quintel Decl. ¶ 30 & Exh. P.]

- Beginning on or around March 1, visitors to Local 715's website could no longer access the former site, but were automatically redirected to the website of Service Employees International Union, Local 521 ("Local 521"), located at http://www.SEIU521.org. Local 521's website contained a prominent statement that five local unions, including Local 715 "have come together . . . by forming one larger, more powerful local." [Quintel Decl. ¶ 32 & Exh. R.] Another page referenced benefits available to "former SEIU Local 715 members." [Quintel Decl. ¶ 32 & Exh. R.]

- On or around March 5, 2007, Local 715's website contained the following statement: "Five locals (415, 535, 700, 715, and 817) have come together to cover the North Central region by forming one larger, more powerful local. On January 2, 2007, our new local received its charter. On March 1, 2007, the resources of all five locals were transferred to Local 521." [Quintel Decl. ¶ 40 & Exh. X.]

- As of March 2, 2007, UHW's website, located at http://SEIU-UHW.org, contained an assertion that UHW represented the Hospitals' employees. [Quintel Decl. ¶ 34 & Exh. S.] UHW has continued to claim to represent the Hospitals' employees on its website.

16

SFCA_1425408.2

[Inciardi Decl. ¶ 24 & 29-30 & Exh. C21-C22.]

• The dues deduction authorization forms, by which the individual bargaining unit members authorized deduction and remittance of union dues, authorized remittance of dues specifically to Local 715, and to no other organization. [Quintel Decl. ¶ 35 & Exh. T.]

• In fact, although it was not known to the Hospitals at the time, the actual recipient of the dues being remitted to "Local 715" was Local 521. A document posted on the Local 521 Website titled "Dues Receipts of the year of 2007" showed that, in September, 2007, Local 521 received a payment of dues totaling $21,949 from an account designated "USW Hospitals" ("USW" being a commonly used acronym for "United Stanford Workers," the name given to the chapter of Local 715 that had been assigned to the SHC/LPCH Bargaining Unit). [Arnold Decl. ¶ 57 & Exh. WW.] This was the exact amount (rounded to the dollar) of the Hospitals' last dues remittance to "Local 715" for February, 2007, which was $21,949.35. [Quintel Decl. ¶ 38 & Exh. V.]

• On March 2, 2007, the Hospitals informed "Local 715" that, after the remittance of the dues for February, 2007, the Hospitals would no longer remit dues to "Local 715" absent clarification of its status and the identity of the organization that would be receiving the dues. [Quintel Decl. ¶ 36 & Exh. U.] The requested information was not provided, and after March 1, 2007, the Hospitals ceased remitting dues. [Quintel Decl. ¶ 37.] The Hospitals continued to deduct dues from Bargaining Unit employees' checks, but held the dues in a separate bank account established for that purpose, a procedure that continues to date. [Quintel Decl. ¶ 37.]

• On June 8, 2007, President Stern issued an "Order Of Emergency Trusteeship." [Inciardi Decl. Exh. Z.] That order stated that, because of the Hospitals' "position" that Local 715 had ceased to exist, and the transfer of the bulk of Local 715's former members and

17

SFCA_1425408.2

resources to Local 521, SEIU was placing "Local 715" under trusteeship, removing its officers, and appointing Bruce W. ("Rusty") Smith as trustee.  The order confirmed that the SEIU's reorganization plan remained in place and that the remaining members of "Local 715" would be "united with other SEIU healthcare members in SEIU United Healthcare Workers – West."  [Inciardi Decl. Exh. Z.]

- Mr. Smith sent a letter to Ms. Quintel on June 14, 2007 informing her of the trusteeship, that the Servicing Agreement would "remain in full force and effect," and that UHW employees would continue to "service" the Hospitals.  [Quintel Decl. ¶ 48 & Exh. FF.]

- Around June 18, 2007, Mr. Arnold learned that Barbara J. Chisholm of the law firm Altshuler Berzon LLP (the "Altshuler Firm") was now representing "Local 715."  Mr. Arnold confirmed this in a conversation with Ms. Chisholm followed by a confirming letter.  [Arnold Decl. ¶ 40 & Exh. FF.]

- To date, the Hospitals have not received any notification that the Altshuler Firm no longer represents "Local 715."  [Quintel Decl. ¶ 57; Arnold Decl. ¶ 40.]

- Since the announcement of the Altshuler Firm's representation of "Local 715," the Hospitals continued to receive correspondence from Weinberg Firm attorneys purporting to act on "Local 715's" behalf in grievance and arbitration matters.  [Arnold Decl. ¶ 49, 55 & 65 & Exh. UU & EEE.]  Weinberg Firm attorneys also appeared in each arbitration hearing that was held after the appointment of the Altshuler Firm as counsel.  [Arnold Decl. ¶ 46 & 49 & Exh. LL.]

- Hospitals were aware that the Weinberg Firm has historically acted as counsel to UHW and it had previously sent correspondence to the Hospitals representing UHW pursuant to the Servicing Agreement.[Quintel Decl. ¶ 17 & Exh. E.]  The Hospitals became concerned that when the Weinberg Firm acted on behalf of "Local 715," it was actually retained by UHW and acting under authority of the rejected Servicing Agreement.

18

SFCA_1425408.2

However, when the Hospitals requested information from "Local 715" on this issue

"Local 715" and its purported attorneys either failed to respond or openly refused to

respond.  [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]  The Hospitals concluded that the

Weinberg Firm was, in fact, representing UHW, and that its appearances on "Local

715's" behalf were made under authority of the rejected Servicing Agreement.

Therefore, the Hospitals refused to participate in arbitration proceedings with Weinberg

attorneys absent assurances that the appearance was made directly on behalf of "Local

715" and not pursuant to the Servicing Agreement.  [Arnold Decl. ¶ 53 & Exh. RR.]

Neither the Weinberg Firm nor the Altshuler Firm provided the Hospitals with the

requested assurance.

It has been recognized that, under the National Labor Relations Act, one union may use

agents or experts from another union to act on its behalf in formal labor negotiations.  *Goad*

*Company*, 333 NLRB 677, 679 (2001).  However, a union may not use the purported

appointment of agents to effectuate a *de facto* change of the bargaining representative, and under

such circumstances, the employer is under no obligation to deal with the purported agents.

*Goad, supra*, 333 NLRB at 680 (employer not obligated to deal with purported agent where

certified union "did not simply enlist the aid of an agent . . . it transferred its representational

duties and responsibilities.")  See also *Sherwood Ford, Inc*, 188 NLRB 131, 133-134 (1971)

(Board disregarded agency agreement between unions as "a device, subterfuge, or stratagem"

designed to accomplish a *de facto* change of the bargaining agent.).

The undisputed facts set forth above demonstrate that, notwithstanding the content of the

Servicing Agreement, in practice, "Local 715" and UHW have used the Servicing Agreement as

a "device, subterfuge, or stratagem" to, in effect, transfer representative status to UHW.  Rather

than serving as a mere agent, as called for in the Servicing Agreement, UHW has sought to

completely supplant Local 715 with respect to every aspect of collective bargaining, leaving

Local 715 as the representative in name only.  Given this, the Hospitals are not obligated to

arbitrate or otherwise deal with employees and representatives of UHW, including Weinberg

19

Firm attorneys, acting pursuant to the invalid Servicing Agreement.

**IT IS ORDERED**, for the foregoing reasons, that the Hospitals' motion for summary judgment or, in the alternative, summary adjudication of claims or defenses is **GRANTED** and that judgment SHALL BE AND HEREBY IS entered against Local 715 and in favor of the Hospitals. **IT IS FURTHER ORDERED** that Local 715's Petition is HEREBY DISMISSED WITH PREJUDICE.

Dated:

By: _____

HON. JEREMY FOGEL
JUDGE OF THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN
DISTRICT OF CALIFORNIA

SFCA_1425408.2